Good morning. May it please the Court, I am Thomas Kummerow, appearing on behalf of Alexander Walls. Court's Instruction 24 was an incorrect statement of the law. Instead of requiring the government to prove Mr. Walls' activities had a substantial effect on interstate commerce, the jury was instructed it could find that any act that affects the flow of money to any degree affected interstate commerce. As a result, we're asking this Court to reverse the convictions on Counts 6, 7, 10, and 16. How does it mistake the law in light of Gonzales v. Reich? Well, historically, as we know, we've got the cases of Lopez and Morrison, which preceded Reich. And those cases, a wonderful historical analysis by Chief Justice Rehnquist in Lopez about the Commerce Clause and how it expanded. And it seems Lopez and Morrison were attempts to rein in the Commerce Clause, to limit the jurisdiction. And then Reich comes along, and it seemingly expands it. They cite Lopez, but even the dissent points out, although citing Lopez, you have increased jurisdiction. You've gone contrary to Lopez and Morrison. Well, it was. Well. I mean, it held. If you look at what was at issue in the first of the cases, you can. Certainly. And Lopez. Speculate on what drove the decision. Absolutely. Lopez and Morrison both used the term substantially affects the Commerce Clause, or substantially affects interstate commerce. Reich changes that. Reich changes it to the de minimis effect, a de minimis effect on interstate commerce, which is a huge difference. So we go from shrinking the reach of the government to expanding it. I'm not sure. Sorry, you disagree with Reich, and so you think that should be, we shouldn't follow it? What my point is, is Bond now changes the landscape. Tell me how. Bond, I will agree, is not a Commerce Clause case. Bond is not a constitutional case. The statute here is not ambiguous, so it's not a statutory, this is not a statutory construction case. What Bond does, though, if you read Bond, it is a stunning decision. They don't talk about the Commerce Clause. They don't talk about the Constitution. Well, the government didn't argue it. They completely reject the government's theory that this was chemical weapons under the tree. That may be, counsel, but the government didn't argue the Commerce Clause. No, they didn't. They expressly didn't. Exactly. But I think what Bond is saying, and I think Bond and the reason that I make the point that we have to reexamine the Commerce Clause cases, especially Reich, in light of Bond, is because Bond is such a stunning decision. They completely reject the government's argument. And the time spent by the Chief Justice Roberts on the facts and the federalism argument and the difference between state jurisdiction and federal jurisdiction and how this is just a minor state-local crime is amazing. Well, I'd like to hear your argument as to why the TVPA, with all of its findings about sexual traffic in domestic and international and the findings about local jurisdictions not being able to adequately protect the victims, how that translates into an extension of a chemical weapons issue to a very small incident affecting a jilted lover. Well, I think what you've got to deal with the findings in the TVPA, if you want to look at the nature of the crimes that are being reached and why prostitution doesn't fit within Congress's intent. Well, you know, I keep going back to Lopez and Morrison, because I think what Bond is saying is we're going to end up going back there, that Reich is not going to be the standard. Well, you know, our prognostications of what the Supreme Court is going to do down the line haven't always been very successful. I understand that. And, you know, the Supreme Court in Bond makes the point that congressional, you know, their statements and their ability, their wish to expand their jurisdiction has limits. And Bond is saying those limits exist. And, you know, it's – I mean, the fact that they don't even go down the constitutional aspect in Bond is, to me, very striking. They spend more time on the facts than anything else. And that's why I say to some extent it's prognostication, to some extent it's a dismissal of Reich. Other than Bond, do you have any other authority that supports your position? Well, no, actually. The essence of my argument is Bond, that, you know, Lopez and Morrison say substantially affects interstate commerce. There's no question. Substantially affects interstate commerce. Reich makes the term de minimis affect, seemingly changing all that. But yet the statute talks about substantially affects. A lot of the cases, once again, refer to substantially affects. So the instruction just talks about any affect. And yet the argument we have is under the statute, under the law, it has to be substantially affects. It can't just be affects, any affect. And you look at what you've got here. The statute doesn't talk about substantially affecting. I'm reading the statute right here. Whoever, morally, in or affecting interstate or foreign commerce. The word substantially doesn't appear in the statute. And what's more, we're told in Circuit City stories that when Congress says affecting interstate commerce, as it did in the TVPA, it entails to regulate to the outer limits of the Congress clause. So please, don't inject your adverb when it doesn't exist. When we talk about the outer limits, once again, there has to be limits. And that's what Lopez was talking about. That's what Morrison was talking about.  Just put those on the back burner. But you've got Raich, once again. Raich is citing Lopez. Raich is citing Morrison. It's not disagreeing with your case. So substantially affects is still there. Does it include these, Raya, Raya, Raya, and Mendocino County for their own consumption? Substantially affects commerce in an illegal business? It certainly was the argument in Raich. But they're all the same, aren't they? Oh, absolutely. But once again, they cite Lopez. They cite Morrison. But they don't overturn Lopez. They don't overturn Morrison. They follow Lopez and Morrison. And Lopez and Morrison both use the term substantially affects interstate commerce. So that has to be the standard because they haven't changed it. They haven't overruled it. They haven't criticized it. It's still the standard. Substantially affects. And so that's why we say the jury instruction is wrong here, is because it allows any act which affects interstate commerce. All right. Thank you very much. Do you want to reserve for rebuttal? I'll reserve the rest of my time for rebuttal. Thank you very much. May it please the Court. Teal Miller on behalf of the United States. Counsel has twice said that the jury instruction here said any act that affects the flow of commerce, a flow of money in the stream of commerce. In fact, what the jury instruction said was any act that is economic in nature and affects the flow of money in the stream of commerce to any degree. And that's why we are in the land of Gonzales against Raich. Raich carves out from Lopez and Morrison, or rather re-recognizes based on Wickard against Filburn, the case that said homegrown wheat for your own consumption is within Congress's power to regulate under the Commerce Clause. And it says Congress has the power under the Commerce Clause to regulate activities that are economic in nature and have a de minimis effect on interstate commerce. And we know that an activity is economic in nature, Raich tells us this, if it involves the production, distribution, or consumption of a commodity. And in Clark, this quote extends that to services. Clark has a case about foreign commerce, travel for foreign commerce. And taking Raich and Clark together, this is a case about an activity, trafficking in persons to provide them for commercial sex that affects interstate commerce in a, well, I would say in a more than de minimis way, but only has to affect it in a de minimis way to be within Congress's power. Bond does, however, all agree with counsel that there's certainly strong federalism concerns in Bond. And there is, even in Circuit City, a reference to their, you know, the jurisdiction, the Commerce Clause jurisdiction language isn't a blank check. And so in this case, if one were to look for congressional intent to actually support the notion that they were, by the phrase affecting commerce, extend indeed, in fact, not just presumptively, but in fact, that's what they had in mind. Is there not information in the congressional intent as to, in the TVPA, as to actually? There is, Your Honor. As Your Honor.  There is, Your Honor. I want to, I will answer that. I will go through the findings. I think there are actually at least three, if not more, findings that show Congress's intent to reach intrastate activity, sex trafficking that met the other elements of the statute. I will say that I'm not sure those findings are necessary when Congress uses this language and we have an activity that's economic in nature. But if you disagree with me, there are findings, and I'll go through them now. When Congress enacted the statute, it said, and this is 22 U.S.C. 7101B12, trafficking in persons substantially affects interstate and forest commerce. It didn't limit that finding to interstate trafficking in persons. When it reenacted the statute, or, excuse me, amended the statute in 2006, it said trafficking in person also occurs within the borders of the states, including the United States. And then it made a finding at the same time that as many as 300,000 children are at risk for sexual exploitation, including trafficking within the United States. All of those findings make clear that Congress saw this as a market, an international and interstate market where incidences that were purely local could affect that market by affecting demand and supply as well. We have also noted in our brief, and I'm happy to discuss it if the Court would like to hear, that this instruction was not objected to at trial, and therefore Mr. Wall would have to show that he was prejudiced, by which I mean he would have to show that the outcome of the trial, there's a reasonable possibility that the outcome of the trial would have been different, and he cannot show that because the evidence, in fact, showed a substantial effect on commerce.  Does Mr. Wall want to be affirmed? Very, very quickly. We're asking this Court to follow Lopez and Morrison. That has to be substantially affects interstate commerce. The jury instruction was wrong, and we're just asking this Court to reverse and remand for a new trial on those counts. And the Congressional finding 12 under the TVPA, the trafficking in persons substantially affects interstate and foreign commerce. Does that play into the analysis? It does, it does, but, you know, yes, it does, quite honestly. And we would just say the facts here, it doesn't show substantial effects. Thank you very much. All right. Thank you very much, Counsel. The United States v. Walls is submitted.
judges: Fisher, Bea, Murguia